Matter of H.R. v New York State Dept. of Health (2024 NY Slip Op 02567)

Matter of H.R. v New York State Dept. of Health

2024 NY Slip Op 02567

Decided on May 9, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 9, 2024

CV-23-1358
[*1]In the Matter of H.R., Petitioner,
v
New York State Department of Health et al., Respondents.

Calendar Date:March 25, 2024

Before:Egan Jr., J.P., Lynch, Reynolds Fitzgerald, Ceresia and Powers, JJ.

Sheila E. Shea, Mental Hygiene Legal Service, Albany (Cailin Connors Brennan of counsel) and City University of New York Disability and Aging Justice Clinic, Long Island City (Natalie Chin of counsel), for petitioner.
Letitia James, Attorney General, Albany (Kate H. Nepveu of counsel), for respondents.

Reynolds Fitzgerald, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Department of Health denying petitioner's application for services through the Office for People with Developmental Disabilities.
Petitioner applied for Medicaid-funded services provided through the Office for People with Developmental Disabilities (hereinafter OPWDD). OPWDD initially denied petitioner's application, finding she failed to establish that she had a developmental disability as defined in Mental Hygiene Law § 1.03 (22). Following a second- and third-step review, OPWDD continued in its determination that petitioner did not meet the eligibility criteria for a developmental disability. Thereafter, petitioner requested a fair hearing pursuant to Social Services Law § 22. Following the hearing, in a determination dated August 2022, respondent New York State Department of Health (hereinafter DOH) found no evidence to establish that petitioner had either a qualifying diagnosis attributable to intellectual disability, or a substantial handicap to functioning attributable to said diagnosis, both of which are necessary eligibility criteria. Petitioner then commenced this CPLR article 78 proceeding to annul DOH's determination. Supreme Court transferred the proceeding to this Court, pursuant to CPLR 7804 (g).
Petitioner contends that DOH's determination upholding OPWDD's denial of Medicaid-funded services is arbitrary and capricious due to its wholesale disregard of the proof presented at the fair hearing. We agree. "While it is well settled that deference is owed to administrative decisions which are supported by substantial evidence in the record, it is also clear that reversal is warranted where procedural or other infirmities render the determination arbitrary and capricious or unsupported by substantial evidence. Such is the case here" (Matter of Imbriani v Berkar Knitting Mills, 277 AD2d 727, 730 [3d Dept 2000] [citations omitted]; see Moore v State Div. of Human Rights, 110 AD2d 507, 508 [1st Dept 1985]).
In order to receive Medicaid-funded services through OPWDD, an applicant must demonstrate that he or she suffers from a developmental disability defined as: "a disability . . . which (a) (1) is attributable to intellectual disability, cerebral palsy, epilepsy, neurological impairment, familial dysautonomia, Prader-Willi syndrome or autism; [or] (2) is attributable to any other condition of a person found to be closely related to intellectual disability because such condition results in similar impairment of general intellectual functioning or adaptive behavior to that of intellectually disabled persons or requires treatment and services similar to those required for such person; . . . (b) originates before such person attains age [22]; (c) has continued or can be expected to continue indefinitely; and (d) constitutes a substantial handicap to such person's ability to function [*2]normally in society" (Mental Hygiene Law§ 1.03 [22]). "Functional limitations are generally considered to constitute a substantial handicap when they prohibit a person from being able to function independently in daily life or when the development of functional skills related to daily living are significantly below expectations given the person's age. . . . Functional limitations constituting a substantial handicap are herein defined as: significant limitations in adaptive functioning that are determined from the findings of an assessment by using a nationally normed and validated, comprehensive, individual measure of adaptive behavior, administered and interpreted by a qualified practitioner following appropriate administration guidelines" (Office for People with Developmental Disabilities Eligibility Guidelines, Determining Eligibility for Services: Substantial Handicap and Developmental Disability at 8, available at https://
opwdd.ny.gov/system/files/documents/2023/12/eligibility_guidelines-final.pdf [last accessed Apr. 10, 2024]).
At the fair hearing, OPWDD waived its appearance [FN1] and submitted and relied on a package containing numerous psychological reports of petitioner previously submitted to OPWDD as part of the three-step review process. Petitioner's counsel and her expert psychologist appeared at the hearing and submitted several reports, including her expert's February 2022 report determining that petitioner's functional limitations are associated with or result from a developmental disorder or combination of such disorders defined as conditions that meet the criteria set forth in the Mental Hygiene Law for developmental disability; and, perhaps most importantly, the expert's July 2022 addendum report, reflecting the fact that she recently personally tested petitioner and the results of that testing, concluding that petitioner meets criteria for a diagnosis of intellectual disability that includes both cognitive and adaptive skills deficits. Moreover, the report maintains that while petitioner may also have mental health issues, a "co-diagnosis" is not unusual, and that these mental health issues do not negate the presence of a developmental disability. The other referenced reports [FN2] include: a 2012 report by psychiatrist John Nicholson noting developmental disorders and identifying deficits in petitioner's cognitive abilities and the need for special services in school; the 2015 Caleo Counseling Center report indicating a presence of organic brain syndrome and developmental disorders; the 2016 Mohawk Valley report indicating petitioner needs prompting for activities of daily living; the 2018 Four Winds report concluding that petitioner demonstrates a pattern of limited cognitive and academic functioning and that the current problems emanate predominantly from a combination of limited cognitive ability in conjunction with limited coping resources; the 2020 Mann RTF report noting that petitioner's history of neglect and attachment disruption [*3]coupled with her cognitive limitations make it very challenging for her to communicate her needs and wants in a safe manner, and further that petitioner has a diagnosis of intellectual disability that significantly impacts her daily functioning requiring an abundance of support from adults for daily living skills; the 2021 Vineland-3 Adaptive Behavior Scales report setting forth that petitioner's communication skills, daily living skills and social skills and relationships are low compared to others her age; the 2021 Achieve Alternative High School psychological evaluation setting forth that petitioner requires close supervision and support due to cognitive, academic, adaptive behavior, social and emotional needs; and the Glens Falls Hospital Behavioral Health Records dated April through June 2022 noting difficulties with independence, with the management of emotion, with the performance of daily living skills generated from petitioner's cognitive impairment and subsequent impairment in skill level. Moreover, petitioner's expert testified, unrebutted at the fair hearing, that based on her own assessment of petitioner, she was within the developmental period [FN3] and met the criteria for a diagnosis of an intellectual disability, including both cognitive and adaptive skills deficits.
State Administrative Procedure Act § 306 (1) provides, in relevant part, that "[n]o decision, determination or order shall be made except upon consideration of the record as a whole or such portion thereof as may be cited by any party to the proceeding and as supported by and in accordance with substantial evidence" (emphasis added). Based on our review of the record as a whole, we find that DOH's determination that there is "no evidence" to establish that petitioner has a qualifying diagnosis or substantial handicap to functioning attributable to a qualifying diagnosis is arbitrary and capricious (see Matter of Ridge Rd. Fire Dist. v Schiano, 16 NY3d 494, 499 [2011]). As the Court of Appeals has noted, "rationality is the underlying basis for both the arbitrary and capricious standard and the substantial evidence rule. It is this concept which guides our analysis of [DOH's] decision for both its rationality and record support" (Matter of Jennings v New York State Off. of Mental Health, 90 NY2d 227, 240 [1997] [citation omitted]). Here, DOH's conclusion that there was no evidence of a qualifying diagnosis is irrational as a matter of law (see Matter of Ridge Rd. Fire Dist. v Schiano, 16 NY3d at 499).
Egan Jr., J.P., Lynch, Ceresia and Powers, JJ., concur.
ADJUDGED that the determination is annulled, on the law, without costs, and matter remitted to respondents for a de novo determination on the entire record.

Footnotes

Footnote 1: Immediately prior to the hearing, counsel for OPWDD moved for an adjournment, citing both that its expert was unavailable due to suffering from COVID-19, and that it did not have an opportunity to review petitioner's most recent submission — the addendum report of petitioner's expert — including an up-to-date testing of petitioner. Counsel averred that a review of this latest report might even allow petitioner to be deemed eligible. The request for an adjournment was denied.

Footnote 2: Petitioner either submitted these reports or the expert testified to the contents of the reports.

Footnote 3: The developmental period is defined as birth to 22 years old.